430 So.2d 742 (1983)
William R. GOODING and Daniel E. Becnel, Jr.
v.
David W. MILLET, Individually and as President of the Saints Oil Corporation and Roland A. Millet, Individually and as a Corporate Officer of the Saints Oil Corporation.
No. 5-261.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 1983.
*743 Michael K. Heltz, Gramercy, for defendants-appellants.
Daniel E. Becnel, Jr., Reserve, for plaintiffs-appellees.
Before CHEHARDY, CURRAULT and GAUDIN, JJ.
GAUDIN, Judge.
Appellants are David and Roland Millet, who are brothers and who together own 662/3rds per cent interest in the Saints Oil Corporation. They appeal from a May 31, 1981, judgment of the 29th Judicial District Court ordering that the corporation be placed in liquidation, with David Millet and William Gooding appointed co-liquidators.
Gooding, who instituted this proceeding as a minority stockholder, owns the shares not owned by the Millets. Gooding has 25 shares and the Millet brothers 25 shares each.
The trial judge based his liquidation order on a violation of LSA-R.S. 12:143, Sec. A(7), which provides:
"A. The Court may entertain a proceeding for involuntary dissolution under its supervision when it is made to appear that:
"(7) The corporation has been guilty of gross and persistent ultra vires acts..."
In his "Reasons for Judgment," the trial judge stated;
"At trial the evidence was convincing that David Millet had operated the corporation as an individual proprietorshipan alter ego of David Millet; Since 1970 no legally called stockholders meetings, no legally called Board of Directors meeting, no dividends ever paid to shareholders, financial transactions and mortgages on corporate property without proper authorization; in fact the failure to comply with the laws regulating the corporate existence and operations of a corporation."
The record supports the trial judge's findings and his liquidation decree, and we will not disturb them.
On appeal, the Millets argue that Gooding should be forced to file a minority stockholder's suit as the acts complained of were not beyond the corporation's power and consequently not ultra vires, as was the case in Streb v. Abramson-Caro Clinic, 401 So.2d 410 (La.App. 1st Cir.1981). While Louisiana's statutory grounds for the relatively drastic remedy of judicial dissolution of a domestic corporation are limited and specific, it is our opinion that the legislature intended that the words "ultra vires" as used in Section A(7) be given a fairly broad application.
There are no reported cases under this section dealing explicitly with the type and number of ultra vires acts that would justify an involuntary dissolution. Regardless, at least some of the criticized actions were ultra vires in the narrow sense, such as the borrowing of funds from a bank and the mortgaging of company assets by David Millet without proper corporate authorization and the apparent payment of salary to a person not employed by the corporation.
The record further shows that the Millets, with David acting as president and Roland as secretary, ran the Saints Oil Corporation to the total exclusion of Gooding after he (Gooding) resigned as an officer and Board of Directors member in 1970. Gooding remained, of course, a stockholder. There were no formal meetings of either the shareholders or Board of Directors, no elections, no accurate annual reports and no dividends. The subpoena duces tecum requested by Gooding calling for the production *744 of corporation records was not satisfied and it was difficult for the trial judge to determine exactly what the corporation did and did not do.
Gooding testified about the possibly illegal mingling of Saints Oil Corporation assets with the assets of other corporations, but the absence of pertinent records precluded proof one way or the other.
One thing the "corporation," i.e., the Millet brothers, positively did not do is issue to Gooding, despite repeated requests, a stock certificate showing his one-third ownership.
Gooding had paid for his shares, but they were never issued, according to David Millet,
"... because the corporation had certain liabilities and shareholders should assume to share liabilities,"
David did not further explain this answer, but he did later testify that he and Roland just agreed not to issue Gooding's stock to him.
The "corporation" did decide to pay David Millet a $300.00 per week salary. David was asked: "Was any resolution ever passed to pay you a salary at any time as president of this corporation?"
His answer:
"... well, Roland and myself talked about it and because of the time involved and for services rendered, we made out, we draw a salary."
Actually, Roland's "salary" was rent he received from the corporation.
While the Millets as officers and directors of Saints Oil Corporation were not precluded from doing business with and even becoming creditors of the company, the relation between them and the corporation was of such a fiduciary nature that the transactions should be subject to close scrutiny. See Missouri Meat Co. v. Richard, 407 So.2d 17 (La.App. 3rd Cir.1981), at page 21.
In the instant case, the lack of records made it impossible for the district judge to determine if the corporation received fair value for the monies paid to the Millets.
The Articles of Incorporation require three or more directors, but the corporation has acted for years with only two. It is obvious from the record that the normal corporate formalities were disregarded and that the "corporation" held impromptu "stockholders' meetings" whenever the Millet brothers decided to discuss business. David Millet was asked how often these meetings occurred, and he replied:
"Sometimes twice a week. Sometimes twice a year. Sometimes every four years ..."
The Millets managed the Saints Oil Corporation with a minimum of formality as family owned and oriented businesses are sometimes conducted, completely ignoring the overt fact that together they owned only two-thirds of the company. Gooding testified that he repeatedly asked the Millets to schedule a meeting of shareholders, which requests were ignored.

CONCLUSION
Considering all of the testimony and the documents in evidence, we cannot say that the trial judge erred in deciding that there were "gross and persistent ultra vires acts" as required by LSA-R.S. 12:143A(7), and that the Saints Oil Corporation should be involuntarily dissolved under court supervision. To hold otherwise would be to condone the way the Saints Oil Corporation has been managed and, more significantly, to allow the majority stockholders to come to court virtually empty-handed with regard to corporate records and contend that the acts complained of were not ultra vires.
Accordingly, we affirm the district court judgment with appellants to pay costs.
AFFIRMED.