449 So.2d 1365 (1984)
Norman ALLEN and Ida Allen
v.
ROYALE "16", INC., et al.
Nos. CA-1263, CA-1264.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 1984.
*1367 Isaac M. Gregorie, Jr., Robert C. Lowe, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for plaintiffs-appellants.
Cameron C. Gamble, New Orleans, for defendants-appellees.
Before GULOTTA, GARRISON and BARRY, JJ.
BARRY, Judge.
Plaintiffs appeal the dismissal of their consolidated cases which involve the purchase and sale of a hotel and its management through a closely held corporation.
In early August, 1980 plaintiff Norman Allen was approached by French Market Homestead (FMH) regarding the management or purchase of The Noble Arms Hotel in New Orleans. On August 14 FMH acquired the property at foreclosure and the next day Allen and the defendants, Sherri Dazet, Kathleen and Nuncion Falcone began managing the hotel. On September 9 these individuals incorporated Royale "16", Inc. On September 15 the group purchased the hotel from FMH for $520,000 with $52,000 down paid equally by Allen, Dazet, and the Falcones and a note for the balance endorsed by all parties. On November 18 the group sold the hotel to Royale "16", Inc. By letter dated January 30, 1981 attorney Michael Ogden (drafter of Royale "16", Inc.) informed Dazet and the Falcones that Allen had been issued all 1200 shares in Royale "16", Inc. and recommended a meeting to clarify their interests. On March 11 the Board of Royale "16", Inc. (composed of all the parties) reissued the stock: 400 shares to Allen, 400 shares to Dazet, and 400 shares to the Falcones. Allen and his wife were removed from the Board and he was ousted as President. Allen sued his associates to rescind the hotel sale to the corporation and asked for management fees, then sued to dissolve Royale "16", Inc. and asked that a receiver be appointed. Defendants reconvened for attorney's and accountant's expenses for defense of the lawsuits. All demands were dismissed. We affirm.

RESCISSION OF THE SALE
Plaintiffs argue the trial court erred by refusing to rescind the sale due to Allen's error as to the nature of the contract, LSA-C.C. Art. 1841,[1]Becker and Assoc., Inc. v. Lou-Ark Equipment Rental Co., 331 So.2d 474 (La.1976). Allen claims the intent of all parties was for the hotel (and corporation) to be managed and operated by unanimous consent and incorporation was only intended to limit liability. He states shortly after the hotel was transferred to the corporation the defendants "conspired to gain control" and prevent him from participating in the management. Allen argues he erred as to the nature of the corporate articles (which provide for majority control): if the incorporation was invalid, then the hotel's transfer was void.
Allen points to Ogden's testimony which indicates the articles were "boiler plate" from a memory typewriter in the attorney's office. He claims there was no discussion as to the corporate structure and the defendants' testimony indicates there was no agreement as to majority versus unanimous control.
However, it is uncontested that the parties purchased equal ownership in the hotel and it was their intent (including Allen's) that each would own one-third of the stock.
Ogden, who was Allen's attorney, testified he did not recall an instruction from Allen to include a provision in the articles *1368 for unanimous consent. He stated the articles were drafted as he had done for Allen in the past and if there had been a request for unanimity it would have been provided.
The defendants' testimony, as stated by the trial judge, is that a majority would control.
Agreements legally entered into have the effect of law on those who form them. LSA-C.C. Art. 1901. One who signs a contract is presumed to know its terms and cannot avoid its provisions, absent fraud or error, simply because he fails to read or understand it. Watson v. Planters Bank, 22 La.Ann. 14 (La.1870), Leny v. Friedman, 372 So.2d 721 (La.App. 4th Cir. 1979).
There is no allegation of fraud. The articles were signed by Allen and drafted at his request. The party alleging error, a vice of consent, bears the burden of proving it. Campesi v. Margaret Plantation, 417 So.2d 1265 (La.App. 1st Cir. 1982). The articles were executed on September 9, 1980 and Allen did not raise any question until January, 1981. Apparently the articles were drafted hastily, but there was adequate time between their execution and the sale by the individuals to the corporation (November 18, 1980) for Allen to read and make any necessary changes or correct errors.
Any change in the Charter must conform to the Louisiana Corporation Law, LSA-R.S. 12:31. Shareholders and others dealing with the corporation must rely on the articles as they appear in the Charter Books of the State. Otherwise one could not enter an act of sale or deal with the corporation for fear that a minority shareholder could have the transaction rescinded by claiming the articles are invalid.
The articles clearly provide for majority control. Plaintiffs' allegations of error are unsupported and the trial judge properly refused to rescind the sale.

INVOLUNTARY DISSOLUTION
Plaintiffs complain the trial court erred by refusing to order the involuntary dissolution of the corporation.
LSA-R.S. 12:143 provides in part:
A. The court may entertain a proceeding for involuntary dissolution under its supervision when it is made to appear that:
(1) The corporate assets are insufficient to pay all just demands for which the corporation is liable, or to afford reasonable security to those who may deal with it; or
(2) The objects of the corporation have wholly failed, or are entirely abandoned, or their accomplishment is impracticable; or
(3) It is beneficial to the interests of the shareholders that the corporation should be liquidated and dissolved, or
* * * * * *
(7) The corporation has been guilty of gross and persistent ultra vires acts;
Plaintiffs claim the corporation was several months behind in paying its hotel-motel taxes and had overdrawn its bank account four or five times during 1982. "The objects of the corporation have wholly failed, or are entirely abandoned or their accomplishment is impracticable" because the corporation never made a profit and Allen never received funds from the corporation. Allen argues it would be "beneficial to the interests of the shareholders that the corporation [be] liquidated and dissolved" because the accounting procedures used by the corporation are inadequate and improper and are endangering the interests of the shareholders. Plaintiffs allege the following deficiencies in the corporation's bookkeeping practices:
The bookeeper was six months behind in posting cash receipts.
No quarterly statements were prepared and loans were not on the corporation's balance sheet.
The bank statements were not reconciled.

*1369 Bank account overdrafts cost penalties.
Tax returns were filed late resulting in penalties.
16% of the room cards, were missing.
There was minimum internal control over cash and no separation of duties regarding receiving and accounting for cash.
There was no listing of capital purchases and no way to calculate depreciation.
Room deposits were not accounted for.
Plaintiffs also claim "the corporation has been guilty of gross and persistent ultra vires acts" citing Gooding v. Millet, 430 So.2d 742 (La.App. 5th Cir.1983). As in Gooding, Allen asserts there have been no shareholder or board meetings since March, 1981. He alleges the corporation failed to give him annual reports, refused to allow inspection of the books and records contrary to LSA-R.S. 12:103,[2] and Dazet resided in the hotel for five weeks.
Louisiana courts are reluctant to apply the drastic remedy of involuntary dissolution and the statutory grounds are limited and specific. Streb v. Abramson-Caro Clinic, 401 So.2d 410 (La.App. 1st Cir. 1981).
The evidence does not prove that the assets are insufficient to pay the debts and the corporation is insolvent. The first mortgage was current. According to Mrs. Falcone and Ms. Dazet the corporation was meeting its obligations. The testimony of a CPA concerning the corporation's inability to pay its debts was based on its 1981 tax return. Ms. Dazet explained that a large amount of the loss was due to scheduled depreciation on the property. She testified the corporation would break even in 1982 and stated the only borrowed money in 1982 was $1300 which was loaned by her and the Falcones.
The evidence also does not show that the "objects of the corporation have wholly failed, or are entirely abandoned, or their accomplishment is impracticable." The corporation at the time of trial was only two years old. When the parties took over the hotel it was failing. Ms. Dazet testified that initially she and Mrs. Falcone took care of everything, from housekeeping to bookkeeping. In 1981 they loaned the corporation $15,000 and in 1982 the additional $1300 was required. They were not paid for their work.
Lack of profit is a consideration to determine if the objects of a corporation have failed, but it is not determinative here. The hotel's operation is improving and defendants appear to be making the business profitable.
We do not believe dissolution would be beneficial to the shareholders. The litany of accounting deficiencies cited by plaintiff are not persuasive.
The daily cash ledger was posted daily and current;
Bank statements were reconciled monthly;
Overdrafts did occur but infrequently;
The tax returns were filed late due to a mix-up with the accountant. Defendants have since engaged another accounting firm.
Plaintiffs' CPA was most concerned with the missing room cards which he felt reflected inadequate internal controls and could represent missing cash. Ms. Dazet testified (and this was confirmed by the CPA) that she had not been asked to explain or locate the missing cards and there was no indication this was a problem. The CPA was unable to state that any cash was missing. He testified the books and records were in "fairly" good order but could not say the management and book-keeping *1370 procedures constituted gross mismanagement.
We do not find that the defendants/majority shareholders and the board are guilty of ultra vires acts. In Gruenberg v. Goldmine Plantation, Inc., 360 So.2d 884 (La.App. 4th Cir.1978) we quoted 58 Fletcher Cyclopedia Corporations 5821:
Unless it clearly appears that the act is an abuse of discretion, intra vires, legal and good faith acts of the board of directors, other corporate officers, or the majority stockholders, i.e., acts pertaining to the internal management, of the corporation, where they are not fraudulent or unfair to minority stockholders, will not be interfered with or remedied at the instance of minority stockholders, regardless of whether such acts are wise or expedient. In other words, to warrant the interposition of a court in favor of the minority shareholders in a corporation, as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company and in a manner inconsistent with its interests. This is the unavoidable result of the fundamental principle that the majority can regulate and control the lawful exercise of the powers conferred upon a corporation by its character. * * * The wisdom of the action taken or threatened will not be considered. It is only when the corporate acts are so unjust as to be evidence of fraud and intentional wrong that the internal management will be interfered with. Courts cannot compel corporate officers to act wisely but they can compel them to act honestly.
Plaintiff's reliance on Gooding, supra, is misplaced. The situation in Gooding was longstanding (approximately ten years) and corporate formalities were totally disregarded. The Fifth Circuit commented:
To hold otherwise would be to condone the way the Saints Oil Corporation has been managed and, more significantly, to allow the majority stockholders to come to court virtually empty-handed with regard to corporate records and contend that the acts complained of were not ultra vires.
Gooding is not remotely similar to this case. Admittedly, no meetings were held since March, 1981, but suit was filed May 18, 1981 and the parties have been at odds since. There were several meetings between September, 1980 and March, 1981.
Allen's allegation that the defendants refused to allow inspection of the records is also unfounded.
The fact that the majority of the shareholders (defendants) removed Allen from the Board and as President is insufficient to justify involuntary dissolution. The actions of the majority were within the corporate powers and not ultra vires. Streb, supra; Gruenberg, supra.
There is no legal basis to order involuntary dissolution of the corporation.

APPOINTMENT OF A RECEIVER
In the alternative, plaintiff requests appointment of a receiver pursuant to LSA-R.S. 12:151 which provides in part:
A. The court may, after trial, appoint a receiver to take charge of the corporation's property when it is made to appear, in a proceeding instituted against the corporation:
(1) By any shareholder or creditor, that the directors or officers of the corporation are jeopardizing the rights of its shareholders or creditors by grossly mismanaging the business, or by committing gross and persistent ultra vires acts, or by wasting, misusing or misapplying the assets of the corporation; or
* * * * * *

*1371 (5) By any shareholder, that a majority of the shareholders are violating the rights of minority shareholders and endangering their interests;
* * * * * *
Plaintiff relies on the same allegations discussed above.
Fincher v. Claiborne Butane Co., 349 So.2d 1014 (La.App. 2d Cir.1977) sets forth the applicable legal principles:
[T]he appointment of a receiver is not mandatory but is subject to sound judicial discretion. In determining whether or not the facts justify and make advisable a receivership, in the absence of a clear showing of fraud or breach of trust the courts are slow to interfere, will order the appointment of a receiver only when it is manifest that it should be made, and are influenced by a consideration of whether such action would serve a useful purpose. This court will not disturb the ruling of the trial judge in his refusal to appoint a receiver except in a case where it clearly appears that the interest of the minority of stockholders are in imminent danger.... receivership of a corporation, as a remedy, looks only to the prevention of future injuries rather than to the redress of past grievances.... The effect of appointing a receiver being to take the property of the corporation out of the control of its own officers to whom it has been entrusted by its stockholders, the courts proceed with extreme caution in the exercise if so summary a power, and in construing such statutes they are inclined to give them a strict construction. * * * A minority of the stockholders of a corporation is not entitled to a receiver because of dissatisfaction with the policy and management of a majority of the officers and directors in the absence of any showing of fraud or insolvency.
* * * * * *
Receivership is granted in cases where there is imminent danger of the rights of minority stockholders being destroyed by a fraudulent or illegal practice intentionally designed to dissipate the assets of the corporation.

Id. at 1016, 1017, 1018 (Citations omitted.)
Plaintiff has not shown that the corporation is insolvent nor that the defendants intend to dissipate its assets. Plaintiffs' CPA stated there was no waste, misuse or misapplication of assets and the defendants had not committed ultra vires acts. Plaintiffs' other CPA testified the corporate expenses were normal, but filing late tax returns was a waste of assets. However, this is not the sort of "wasting" envisioned by the legislature to justify appointment of a receiver. As fully stated above, plaintiffs' other allegations are unsupported by the record.
Receivership is proper only where mismanagement is "wilful and its purpose is to ruin the corporation ... where the facts disclose a scheme on the part of the... majority stockholder to wreck the corporation and dissipate its assets." West v. Certified Credit Corporation, 162 So.2d 589, 595 (La.App. 2d Cir.1964). The lower court concluded there has been no such showing and we find no error in the trial judge's refusal to appoint a receiver. Accordingly, attorney's fees requested by plaintiff under LSA-R.S. 12:151(D) were also appropriately denied.

COMPENSATION FOR SERVICES
Allen contends he had an agreement with FMH whereby he would manage the hotel and could keep the excess income after expenses. He states his agreement with defendants was that if the sale went through he would keep any excess; if it did not go through the net amount would be split equally. FMH's President testified he thought any extra money was to apply toward the purchase price. Defendants claim that the excess would be put back into the corporation if the sale was consummated and profits would be taken only if there was no sale. The trial judge apparently *1372 believed defendant's version and we find no basis to hold otherwise.
The judgment of the District Court is affirmed at plaintiffs' cost.
AFFIRMED.
NOTES
[1] LSA-C.C. Art. 1841 provides:

Error as to the nature of the contract will render it void.
The nature of the contract is that which characterizes the obligation which it creates. Thus, if the party receives property, and from error or ambiguity in the words accompanying the delivery, believes that he has purchased, while he who delivers intends only to pledge, there is not [no] contract.
[2] LSA-R.S. 12:103(D) provides in part:

Upon at least five days' written demand, any shareholder, except a business competitor, who has been the holder of record of at least two per cent of all outstanding shares of the corporation for at least six months, shall have the right to examine, in person or by agent or attorney, at any reasonable time, for any proper and reasonable purpose, any and all of the records and accounts of the corporation, and to make extracts therefrom.