CALOGERO, Justice.
Should plaintiffs and a class of minority members in the non-profit corporation succeed in their effort to liquidate and dissolve the Vacherie Fire Department No. 1? Were plaintiffs and the class illegally expelled from this non-profit corporation?
The trial judge, whose judgment was affirmed by the Court of Appeal, dismissed the petition for liquidation and dissolution and held that the minority members were legally expelled.
For the reasons which follow we determine that plaintiffs and the class were not legally expelled. Nonetheless, the courts below were not wrong in refusing liquidation and dissolution of the corporation.
Vacherie Fire Department No. 1 is a non-profit corporation conducting its affairs in St. James Parish. It was created in 1959 for the primary purpose of furnishing fire protection in that portion of St. James Parish which is on the West Bank of the *1323 Mississippi River.[1] The corporation apparently operated successfully for some 19 years, when in 1978 a rift in the membership developed over locating the Fire Department’s main fire house in North Vach-erie.[2] Preceding 1978, over a period of years, the membership rolls were about evenly divided between members who resided in South Vacherie and those who resided in North Vacherie. By 1978, however, there were just thirty-six members who resided in South Vacherie and 195 who resided in North Vacherie. In February of 1978, and while the mentioned controversy continued, the South Vacherie group formed a new nonprofit corporation called the South Vacherie Volunteer Fire Department, Inc.[3] Meanwhile meetings of the Vacherie Volunteer Fire Department No. 1 were ridden with strife. At the March 6, 1978, meeting, efforts at settling differences between the two competing factions failed by a vote of 60-47. At that meeting, the membership voted down a proposed resolu-
tion which would have authorized amendment of the charter to reduce the area to be served by Vacherie Volunteer Fire Department No. 1 conditioned upon formation of a new legally chartered South Vacherie Volunteer Fire Department.[4]
Efforts at amicable settlement having failed, a meeting of the general membership was called for January 15,1979, for the sole purpose of amending the charter to reduce or limit the area to be served by the corporation to areas of the West Bank of St. James Parish lying north of Highway 3127 (North Vacherie).[5] The membership voted at that meeting 60-0 with 6 abstentions, in favor of amending the charter. This charter amendment would effectively, have expelled all members residing in South Vacherie. On that same evening of January 15, 1978, following the membership meeting, the Board of Directors met and passed a resolution along the same lines.[6] It established the corporation’s *1324 “membership boundaries,” thereby excluding from the corporation all members who did not live in North Vacherie, except those South Vacherie residents who owned businesses in North Vacherie. Notwithstanding that no amicable settlement had been achieved, the Vacherie Volunteer Fire Department transferred to the South Vacherie Fire Department the fire house, the land on which it was situated and the lease of an adjacent tract of land, all located in South Vacherie.
On April 18, 1980 four members of the defendant non-profit corporation, all residents of the South Vacherie area, filed this lawsuit, and later converted it to a class action. They contended that the action of the membership and the Board of Directors discussed above adversely affected the rights of those members thereby excluded from further participation in the corporation, that the resolutions were passed illegally, that the Board of Directors breached their fiduciary duty to the corporation, and that the object of the corporation had wholly failed and had been abandoned. Their prayer sought liquidation and dissolution of the Vacherie Fire Department No. 1 as well as “a sum to compensate them for losses sustained by the actions described in petition.” They sought this liquidation and dissolution under La.R.S. 12:251.
Neither in the petition, nor in any supplemental or amended petition, nor with the stipulated assent of defendants did plaintiffs seek to invoke receivership under R.S. 12:258. For these reasons we will not in the remainder of the opinion address the matter of receivership.
After trial the district court rendered a judgment which by its terms 1) was in favor of plaintiffs in that it decreed the membership action to limit the area to be served, to have been improper and of no force and effect, 2) was in favor of the Vacherie Volunteer Fire Department No. 1, Inc. and against plaintiffs in that it decreed the action of the Board of Directors at the January 15, 1979, meeting to limit those eligible for membership to have been proper and binding, and 3) was in favor of the Vacherie Volunteer Fire Department against plaintiffs in that it dismissed with prejudice any and all other claims raised in plaintiffs’ petition.
The district judge’s reasons in support of that judgment were fairly simple. They did not specifically address the right to dissolution (nor the right to receivership). The trial judge determined that the membership resolution was illegal, essentially because the members were not given the 30 days notice required by R.S. 12:237(E)(2) “when a meeting to amend the articles is called.”[7] The reasons went on to recite, however, that the Board of Directors’ resolution restricting membership was legal, that it was not fraudulent or a breach of trust, and that the action taken by the Board of Directors was in good faith.
The trial court therefore denied all of the relief sought, which in plaintiffs’ petition was simply for liquidation and dissolution and damages.
The Court of Appeal affirmed the trial court judgment. In its opinion the court addressed plaintiffs’ right to receivership, and alternatively, dissolution. They con- *1325 eluded that receivership was not in order because there had not been proved an unjustified effort to disenfranchise minority shareholders; that the Board of Directors had done its best to resolve a bad situation. They also noted with respect to dissolution, that R.S. 12:251 permits but does not mandate a court's ordering dissolution, even where one or more of the requirements of R.S. 12:251 are met. And they approved the trial judge’s refusal to permit dissolution of the corporation for similar reasons as those noted above and because the object of the corporation had not wholly failed.
The primary question which we must resolve is whether the lower courts erred in denying to plaintiffs a liquidation and dissolution of the corporation. An ancillary question which could bear upon whether to order dissolution relates to the conduct of the corporate affairs by the membership and the Board of Directors, including the Board of Directors’ resolution of January 15, 1979, reducing the “membership boundaries,” an action which effectively expelled from membership those members who resided in South Vacherie.
The essential complaint of plaintiffs is that they have been illegally expelled from the corporation and thus deprived of the opportunity and the right to enjoy membership and, in connection therewith, the nonprofit corporation’s assets which have been accumulated over the years. They complain also that the Board of Directors has by resolution so restricted membership that non-members living in the South Vacherie area, who might otherwise have joined in the future, may not do so. They contend that involuntary dissolution should be invoked under the provisions of subsections (2) and (3) of R.S. 12:251.
R.S. 12:251, a statute governing nonprofit corporations, provides pertinently that:
“A. The court may entertain a proceeding for involuntary dissolution under its supervision when it is made to appear that:

“(2) The objects of the corporation have wholly failed or are entirely abandoned, or their accomplishment is impracticable; or
“(3) It is beneficial to the interest of the members that the corporation should be liquidated and dissolved;
...”[8]
We will first address the legality of the membership and Board resolutions.
The membership resolution which would have authorized amending the charter of the non-profit corporation to limit the corporation’s geographical boundaries was not legal, as the trial judge found, because the 30 day notice requirement mandated by La.R.S. 12:237(E)(2) was not complied with.
The Board of Directors’ resolution which effectively expelled plaintiffs and reduced the geographical boundaries of the corporation, however, was invalid. The ruling below in this respect was incorrect. The trial judge held that the Board has the power to expel members and constrict membership boundary lines because the Articles of Incorporation gives them the power to govern the matter of admission of members. In fact, however, the pertinent article, Art. VIII, merely gives “the Board of Directors ... the power ... to make ... by-laws, rules and regulations necessary and proper ... for the regulation of the conduct (emphasis provided) of the members.” He held, in the alternative, that if the articles did not bestow such power on the Board the same result would, of necessity, obtain by reason of R.S. 12:217(C).
R.S. 12:217(C) is a provision which, preceding creation of a corporate membership, permits the first board of directors to “be taken to be the members of the corporation” and permits them to “exercise all the rights and powers of the members.”[9] Un *1326 der this theory the Board of Directors would constitute the sole membership and thus could make and establish, alter and amend all by-laws including those governing expulsion. (See R.S. 12:217(A)).
R.S. 12:217(C) does not apply in this situation for on January 15, 1979, the corporation did have a membership distinct and separate from the Board of Directors. Thus, the Board of Directors did not, by virtue of R.S. 12:217(C) have the power which is entrusted to the membership.
And, although the Board might well “make, amend and repeal the by-laws of the corporation, subject always to the power of the members to change the action of the directors” (R.S. 12:222(A)), they may not make by-laws inconsistent with the laws of this state (R.S. 12:207(B)(10)). The laws of this state do address the matter of expulsion of members, in R.S. 12:210(H), under which a non-profit corporation simply does not have the power to exclude from further membership any member except one who fails “to comply with the reasonable and lawful requirements of the rules and regulations made by the corporation for the government of its members.”[10]
In this case the South Vacherie members were not expelled for violating or failing to comply with the corporation’s rules and regulations. There was simply a unilateral and instant expulsion attempted by the Board of Directors for the reasons which, as noted earlier in this opinion, were unrelated to failure to comply with rules and regulations. Accordingly, the courts below were wrong and the portion of the judgment which addressed this ancillary question was incorrect. The Board’s expulsion resolution was not legal and proper.
Determining that the board resolution was illegal does not resolve the primary question here, to which we alluded earlier in the opinion. That question is whether plaintiffs have made out a case for liquidation and dissolution of the corporation.
The plaintiffs’ case for liquidation and dissolution is supported, they contend, by the fact that they’ve been expelled illegally. Of course, this Court’s recognition that the resolution and its effective expulsions are illegal, in part at least, obviates the latter complaint.
Plaintiffs invoke 12:251(A)(2), contending that the object of the corporation has wholly failed or is entirely abandoned or its accomplishment made impracticable. Specifically, plaintiffs contend that the object of the corporation has failed since that object was fire protection for all of Vacher-ie. Plaintiffs also assert that liquidation and dissolution is beneficial to the interests of the members of the corporation.
Dissolution is a drastic remedy, and the statutory grounds are limited and specific. Allen v. Royale 16, Inc., 449 So.2d 1365 (La.App. 4th Cir.1984); Streb v. Abramson-Caro Clinic, 401 So.2d 410 (La.App. 1st Cir.1981).
Furthermore, R.S. 12:251 does not require dissolution, but simply provides that a court may entertain a proceeding for involuntary dissolution under its supervision when it is made to appear that one or more of eight specified causes exists.
Of those eight grounds which may trigger an involuntary dissolution, only R.S. 12:251(A)(2) and (3) arguably apply here.
R.S. 12:251(A)(2) provides:
*1327 (2) The objects of the corporation have wholly failed, or are entirely abandoned, or their accompishment is impracticable;
And R.S. 12:251(A)(3) provides:
(3) It is beneficial to the interests of the members that the corporation should be liquidated and dissolved.
Liquidation and dissolution may or may not be beneficial to the minority South Vacherie members who by this opinion we have determined are still legally members of the Vacherie Volunteer Fire Department. Liquidation and dissolution is certainly not beneficial to the majority of the membership.
And under the cause recited in R.S. 12:251(A)(2), above, the objects of the corporation must (A) “have wholly failed” or (B) “are entirely abandoned” or (C) “their accomplishment is impracticable.”
Under Article III of the Articles of Incorporation the objects of the corporation are declared to be:
(a) To protect lives and property from fire or other calamity within the jurisdiction of the West Bank of the Mississippi River, in St. James Parish, Louisiana, and especially in the area of Vacherie, Louisiana, and other areas which may be in need of assistance from a fire company.
(b) To promote the general welfare of Vacherie, the Parish of St. James, and of the State of Louisiana.
(c) To promote training of its members in order that they may be adequately prepared to protect lives and property in the event of fire or other calamity.
(d) To promote social contact among its members.
. . . . .[11]
The objects have surely not been “entirely abandoned,” nor is their accomplishment necessarily impracticable. And the objects have not wholly failed. At best the minority members can protest that they fear unfair treatment hereafter by the majority. That, of course, does present something of a problem. But weighing against that is the disservice which we would render were we to order dissolution and sale of the assets of this -voluntary fire department which has so long served the West Bank of St. John Parish.
As the Court of Appeal noted, the Vach-erie Volunteer Fire Department has peacefully transferred some of its former assets to the recently chartered South Vacherie Fire Department and has cooperated with the latter Department on a new area wide fire alarm system. The Court of Appeal also noted that the Vacherie Fire Department considered the harmony of its membership and the good of the community and found that the interest of its members as a whole would be served by not liquidating and dissolving the corporation.
When we weigh the horrendous effect of liquidation and dissolution against the harm to minority members and consider what is “beneficial to the interests of the members,” and in light of the absence of a showing that the objects of the corporation have wholly failed, or are entirely abandoned, or their accomplishment is impracticable, we conclude that the courts below were not wrong in refusing to entertain a proceeding for involuntary dissolution under court supervision.

Decree

For the foregoing reasons we find that the judgments below refusing to permit a liquidation and dissolution were correct. With the exception of that portion of the judgment of the Court of Appeal holding the board resolution legal and proper, we affirm the judgments below.
JUDGMENT REVERSED IN PART; AFFIRMED IN PART.
DIXON, C.J., concurs.
DENNIS, J., concurs in part and dissents in part.

. Article III of Vacherie Volunteer Fire Dept. # 1 states:
ARTICLE III.
The objects and purposes of this Corporation are declared to be
(a) To protect lives and property from fire or other calamity within the jurisdiction of the West Bank of the Mississippi River, in St. James Parish, Louisiana, and especially in the area of Vacherie, Louisiana, and other areas which may be in need of assistance from a fire company.

. Until then the only Department fire house was located in South Vacherie.

. Interestingly, Article II of the South Vacherie Fire Departments Articles of Incorporation states:
The intention of the incorporators of this nonprofit corporation is to assist and complement the existing fire department and not to compete with them but to provide protection for the South Vacherie area.

. Excerpt from minutes of a special membership meeting of March 6, 1978; resolution which failed:
"That Article II of the Articles of Incorporation be amended so as to reduce or limit the area to be served by this Corporation to all areas of the West Bank of St. James Parish lying north of the 80 arpent line, conditioned upon the South Vacherie Unit of the department forming a new legally chartered volunteer fire department to serve that area to be excluded and to limit membership in Vacher-ie Volunteer Fire Department No. 1, Inc. and to its Board of Directors to persons actually residing in the new reduced area.”

. VACHERIE VOLUNTEER FIRE DEPARTMENT NO. 1, INC.
Vacherie, La.
Minutes of Special Meeting — January 15, 1979

"In accordance with the provision of R.S, 12:237, notice is hereby given of a special meeting of the members of the Vacherie Volunteer Fire Department No. 1, Inc. to be held on January 15, 1979 at 7:00 P.M. at the North Vacherie Station, to consider an amendment to Article III of the Articles of Incorporation so as to reduce or limit the area to be served by this corporation to all areas of the West Bank of St. James Parish lying north of Highway 3127."

. VACHERIE VOLUNTEER FIRE DEPARTMENT NO. 1, INC.
Vacherie, La.
Minutes of Board of Directors Meeting, January 15, 1979

"Membership in the Vacherie Volunteer Fire Department was discussed. It was passed unanimously that our membership boundaries be established as follows:
*1324 East Boundary — West Boundary of Whitney Plantation
West Boundary — St. James-Ascension Parishes boundary line
South — Highway 3127
North — Mississippi River
It was also passed that residents living outside of above boundaries who owns businesses within our area be allowed membership in our organization.”

. La.R.S. 12:237. Amendment of articles generally

(2) When a meeting to amend the articles is called, the members shall be given thirty days’ written notice thereof. This notice shall describe the amendments proposed, and may be mailed to the members at their last addresses on the records of the corporation. Notice of the meeting shall be given also by advertisement, within thirty days before the meeting, in a daily paper published in the parish in which the corporation is domiciled, if there is such a paper. If no daily paper is published in the parish, notice shall be given by posting the same for thirty days in the principal meeting place of the corporation, if it has such a *1325 meeting place, or at the parish courthouse door otherwise.

. 12:251(A)(1) and (A)(4), (5), (6), (7) and (8) are not pertinent in this case.

. § 217. Classes and qualifications of membership

C. If neither the articles nor the by-laws provide for members or shareholders, or if a *1326 corporation has, in fact, no shareholders, and no members other than the persons constituting its board of directors, the persons for the time being constituting the board shall, for all intents and purposes, be taken to be the members of the corporation, and shall exercise all of the rights and powers of the members.

. La.R.S. 12:210, "Members, Shareholders and Certificates,”
Except as provided in R.S. 12:209:

(H) A corporation shall have the power to exclude from further membership, any member who fails to comply with the reasonable and lawful requirements of the rules and regulations made by the corporation for the government of its members.

The clear and compelling inference from R.S. 12:210(H) is that a corporation does not have the power to expel members except as provided therein.

. Art. Ill of the Articles of Incorporation, subsection (e) through (h) relate generally to the power of a corporation to acquire assets, to borrow money, to invest funds, and to do all things necessary to accomplish the objects and purposes of the non-profit corporation.