533 So.2d 1011 (1988)
J. Marion MATHERNE, Individually and on Behalf of Response Instrument Service & Engineering Corporation
v.
RESPONSE INSTRUMENT SERVICE & ENGINEERING CORPORATION, Norman C. Heffron, Mrs. Norman C. Heffron, George Ed Deprato, Richard D. Burgett, John Hoy and David Legendre
J. Marion MATHERNE, etc.
v.
RESPONSE INSTRUMENT SERVICE & ENGINEERING CORPORATION, Norman C. Heffron, and George Ed Deprato
RESPONSE INSTRUMENT SERVICE & ENGINEERING CORPORATION, d/b/a Rise, Inc.
v.
J. Marion MATHERNE, Rise Inc. and the Louisiana Secretary of State
RESPONSE INSTRUMENT SERVICE & ENGINEERING CORPORATION, d/b/a Rise, Inc.
v.
J. Marion MATHERNE, Joan Matherne, Curt M. Matherne and Anne M. Matherne.
Nos. CA 87 0912-CA 87 0915.
Court of Appeal of Louisiana, First Circuit.
October 12, 1988.
Rehearing Denied November 30, 1988.
Writ Denied February 17, 1989.
*1013 Kevin Patrick Monahan, Baton Rouge, for plaintiff-appellant J. Marion Matherne, Individually and on behalf of Response Instrument Service and Engineering Corp.
James P. Doré, Plaquemine, for defendant-appellee Response Instrument Service and Engineering Corp. d/b/a Rise, Inc., Norman C. Heffron, George Deprato, Mrs. Norman C. Heffron, Richard D. Burgett, John Hoy and David Legendre.
Before CARTER, LANIER and LeBLANC, JJ.
LeBLANC, Judge.
The issues raised by this appeal concern a disputed election of a board of directors of a closely held corporation.

FACTS
In May of 1966, Response Instrument Service & Engineering Corporation was incorporated by Mr. and Mrs. J. Marion Matherne and Mr. and Mrs. Norman Heffron. Mr. Matherne and Mr. Heffron were each issued forty-eight (48) percent of the shares in the corporation and their wives were issued two (2) percent each. The corporation prospered and Matherne and Heffron eventually decided to establish an employee stock incentive program, which allowed key employees to purchase stock in the corporation. Several employees took advantage of this opportunity. After these sales, the Mathernes and Heffrons each still owned approximately 44.9 percent of the stock in the corporation.
At some point thereafter, while Matherne was serving as president of the corporation and Heffron as secretary-treasurer, they began having serious disagreements as to the operation of the corporation. In 1982, an employees' management committee was formed in an unsuccessful attempt to resolve these differences.
On October 15, 1982, Heffron sent notice, in compliance with La.R.S. 12:73, to all shareholders of a special meeting to be held on October 27, 1982 for the purpose of electing a new board of directors. At that time, Matherne and Heffron each held a position on the board of directors. At the meeting on October 27, 1982, an objection was raised to the meeting on the basis that the corporation's articles of incorporation required that the board of directors be elected at an annual meeting. Matherne, acting as chairman, sustained this objection. However, a majority of the shareholders voted to override his ruling. Initially, there also was disagreement as to which parties had the right to vote because of certain disputed transfers of stock. However, the parties, each of whom had counsel present, eventually stipulated, with *1014 two exceptions, to who could vote and how many shares each controlled. In the election which followed, Matherne was not reelected to the board of directors. Heffron and his wife, as well as two other employees, were elected to the new board. The day following the election, Matherne's employment with the corporation was terminated.

PROCEDURAL BACKGROUND
A number of suits were filed as a result of these above chronicled events. Matherne filed two suits seeking in essence: the invalidation of the October 27th election of the board of directors and its subsequent actions; liquidation and dissolution of Response Instrument; and, on behalf of the corporation, reimbursement from Heffron for corporate funds allegedly used for his personal benefit. Matherne also asserted a claim for defamation.
Response Instrument and Heffron answered these suits and reconvened seeking damages for defamation and harassment of Heffron and other Response Instrument employees. Response Instrument also filed two other suits, one seeking damages for the conversion by Matherne's family of several corporate automobiles and one seeking an injunction prohibiting Matherne from operating a corporation under the name of "RISE, Inc.". These four cases were consolidated for trial.
Trial of these consolidated suits was held on September 29, 1986. The parties stipulated that the defamation claims would be tried by a jury, with all remaining issues to be decided by the trial court. Following the presentation of Matherne's case, defendants moved for a directed verdict on Matherne's claims. The trial court granted defendants' motions and dismissed both of Matherne's suits (District Court Numbers 261,718 and 261,719). At this time, without putting on any evidence, defendants (plaintiffs-in-reconvention) submitted their reconventional demand asserting a claim for defamation and harassment (District Court Number 261,719). The court dismissed this claim, as well as Response Instrument's conversion suit (District Court Number 263,196). Since both defamation claims had been dismissed by the court, the jury was discharged at this point.
Trial was then held on Response Instrument's suit for an injunction prohibiting Matherne from using the trade name "RISE, Inc." (District Court Number 262, 226). Judgment was ultimately rendered in favor of Response Instrument and the requested injunction was issued. Matherne has now appealed the dismissal of his two suits and the granting of the injunction prohibiting him from using the trade name "RISE, Inc.".

ISSUES
1. Whether the election of the board of directors on October 27, 1982 and subsequent acts were valid?
2. Whether grounds have been established for the involuntary dissolution of Response Instrument?
3. Whether the trial court erred in granting a directed verdict in favor of defendants on Matherne's suit for defamation?
4. Whether Matherne has established the elements necessary to prevail on a claim for intentional infliction of mental distress?
5. Whether Response Instrument, by virtue of prior use of the name "RISE, Inc.", was entitled to an injunction prohibiting Matherne from using this trade name, even though Matherne had reserved this name through the Secretary of State?

ISSUE ONE
Matherne contends the election of the new board of directors on October 27, 1985, was invalid because it took place at a special rather than an annual meeting. Article VIII of Response Instrument's articles of incorporation provides that: "... The Directors [Board of Directors] shall be elected by a majority vote of the general annual meeting of shareholders ...". (emphasis added). Further, Article IX provides that: "A general annual meeting of the shareholders of this Corporation for the *1015 election of Directors ... shall be held at such time and place as shall be fixed by the By-laws. (emphasis added). As of the time the meeting in question was held, no by-laws had been adopted by the corporation.
In considering the present issue, Response Instrument's articles of incorporation must be read as a whole. While they do provide that the board of directors shall be elected at an annual meeting, they also provide that this meeting should be held in accordance with the corporation's by-laws. However, since the corporation in this case had no by-laws, the articles failed to provide any method for shareholders and/or directors to call an annual meeting for the purpose of electing directors. Faced with this impasse, defendants utilized the procedure provided in La.R.S. 12:73 for calling a special meeting. We note that the procedural and notice requirements of this provision are more onerous than those required for an annual meeting.
In the instant case, Matherne received actual notice both of the time and place of the special meeting, as well as the purpose for which it was called. He has not demonstrated that he was prejudiced in any manner by the technicality that the election was held at a special, rather than at an annual meeting. Furthermore, Matherne does not contend that an annual meeting had been or would have been called at any time during 1985. Under the specific circumstances present herein, we conclude the trial court acted correctly in upholding the validity of the October 27th election and subsequent actions of the new board of directors.
Matherne also argues that the October 27th meeting was a nullity because it should have been adjourned and the matter submitted to arbitration when he objected to the compilation of the shareholders list. A transcript of the meeting reveals that Matherne did object to the shareholders list. However, it also reflects that following a recess called for the specific purpose of discussing the matter, the parties reached an agreement as to who could vote and how many shares each could vote, with the exception of eight shares allegedly controlled by Mrs. Heffron and ninety-two shares sought to be voted by proxy. However, Matherne, as chairman, later recognized the proxy. Nevertheless, he now argues that he was unaware until after the meeting that the proxy in question involved shares which had been transferred in violation of a specific stock agreement and therefore was not valid.
Initially, we note that Matherne is precluded by his acquiescence from challenging any of the shareholders or the number of shares they voted to which he had specifically agreed at the meeting. Further, we need not consider whether the hundred shares in dispute were properly voted, because the margin of votes for and against Matherne was greater than one hundred. Thus, Matherne would not have been reelected to the board even assuming for the sake of argument, that these one hundred shares of stock would have been voted in his favor.

ISSUE TWO
Matherne argues that the trial court erred in refusing to order an involuntary dissolution of Response Instrument pursuant to La.R.S. 12:143 A(2) & (7), which provide as follows:
A. The court may entertain a proceeding for involuntary dissolution under its supervision when it is made to appear that:
(2) The objects of the corporation have wholly failed, or are entirely abandoned, or their accomplishment is impracticable; or
. . . . .
(7) The corporation has been guilty of gross and persistent ultra vires acts....
The statutory grounds for involuntary dissolution of a corporation are limited and specific. Since involuntary dissolution is an extremely drastic remedy, courts are reluctant to apply it. Allen v. Royale 16, Inc., 449 So.2d 1365, 1369 (La.App. 4th Cir.1984).
*1016 After careful examination of the testimony and exhibits, we find no error in the trial court's conclusion that Matherne has failed to establish grounds for involuntary dissolution of Response Instrument under La.R.S. 12:143 A(2). The object for which the corporation was formed was to engage in the business of general engineering and development of inventions, devices and machines. There is no indication that this object has failed, been abandoned or become impracticable. The corporation is presently fulfilling this purpose through its current board of directors and employees.
Further, although there have been some losses, the evidence does not indicate that the corporation is unable to pay its current debts or is insolvent. Lack of profit is one consideration in determining whether the object of a corporation has failed, but it is not determinative in itself. Allen, supra. In the instant case, the corporation appears to be a viable, ongoing business. The fact that Matherne was removed from the board of directors and his employment terminated does not warrant involuntary dissolution of Response Instrument. Allen, supra at 1370; Streb v. Abramson-Caro Clinic, 401 So.2d 410, 414 (La.App. 1st Cir.), writ denied, 403 So.2d 69 (1981).
Matherne also contends the corporation should be dissolved under La.R.S. 12:143 A(7) because of gross and persistent ultra vires acts. These acts consist of the alleged appropriation by Heffron and his family of corporate funds for their personal use. Initially, we note that Heffron denied that the use of these funds was for his or his family's personal benefit. Secondly, Matherne was aware of these expenditures when they occurred and did not object to them as being ultra vires acts at that time. Considering all of the evidence and the credibility determinations involved, we find no manifest error in the trial court's refusal to dissolve the corporation under La.R.S. 12:143 A(7).

ISSUE THREE
Matherne argues the trial court erred in granting a directed verdict on his defamation claim, rather than allowing the jury to decide this issue.
In order to maintain an action for defamation, the following elements must be established: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and, (5) resulting injury. Cangelosi v. Schwegmann Bros., Etc., 390 So.2d 196 (La.1980). A communication is considered defamatory if it tends to harm a person's reputation so as to lower him in the estimation of the community. Freeman v. Cooper, 414 So.2d 355 (La.1982).
The standard for determining if a directed verdict should be granted is whether, after reviewing all of the evidence, and resolving all inferences in favor of the opposing party, reasonable men could not arrive at a verdict in favor of the non-mover. La.Code of Civ.P. art. 1810; Bessie v. K-Mart Apparel Fashions Corp., 472 So.2d 251 (La.App. 1st Cir.1985). Applying this standard to the present case, we find no error in the granting of a directed verdict in defendant's favor for the following reasons.
Matherne contends that he was defamed by Norman Heffron, when Heffron made several statements to the effect that he believed Matherne and Lois Crawford, a former employee, were "emotionally involved". Matherne argues that these statements impute immorality to him. We disagree.
The statements at issue are not defamatory per se. The mere statement that Matherne had an emotional relationship with Ms. Crawford does not in itself impute any immorality on the part of either party or lower their reputations in the community. Further, Matherne has not shown that he has suffered any injury or damages whatsoever as a result of these remarks. The testimony of those to whom the remarks were addressed did not indicate that their opinion of Matherne changed in any manner after hearing these remarks.
Other allegedly defamatory statements made by Heffron concerned his opinion that Matherne was remiss and, accordingly, bore some responsibility for the embezzlement of a substantial amount of corporate funds by an employee under his *1017 supervision. However, Matherne once again has failed to establish several essential elements for sustaining a defamation claim. Matherne has not established that he suffered any injury as a result of these remarks, which were made to employees of Response Instrument. The evidence presented was insufficient to show whether or not Matherne properly supervised the employee who embezzled the funds. Therefore, Matherne has not established the element of falsity to a sufficient degree.
Moreover, even if all essential elements had been established, recovery against defendants would still be precluded on the basis that these remarks were privileged. A qualified privilege exists whenever a defamatory communication is made: (1) in good faith, (2) on a matter in which the person making the communication has an interest or with regard to which he has a duty, or (3) to a person with a corresponding interest or duty. Jones v. Wesley, 424 So.2d 1109 (La.App. 1st Cir.1982). In this case, Heffron made the remarks to employees of the corporation, who, like him, had an interest in Matherne's ability to manage and direct the company. Heffron's evaluation of Matherne's responsibility for the embezzlement certainly bore on this ability. Therefore, we find that these remarks were privileged in the limited context in which they were made.
Considering these circumstances, we find that a reasonable man could not have arrived at a verdict in favor of Matherne. Accordingly, the trial court did not err in granting a directed verdict.

ISSUE FOUR
Matherne argues that, even though he did not specifically plead it in the lower court, the evidence presented was sufficient to support a claim for intentional infliction of emotional distress resulting from his ouster from the board of directors, the termination of his employment and subsequent actions of defendants.
In order to recover for emotional distress due to an intentional tort, it must be established that the defendant either actively desired to bring about the mental anguish or realized to a virtual certainty that it would occur. Breaux v. South Louisiana Elec. Co-op. Ass'n, 471 So.2d 967 (La.App. 1st Cir.1985). Further, recovery is limited to situations where the conduct complained of was outrageous or atrocious. Bouton v. Allstate Ins. Co., 491 So.2d 56 (La.App. 1st Cir.1986); Breaux, supra.
The conduct complained of by Matherne herein does not meet these requirements. Firstly, it was not shown that defendants actively intended to inflict emotional anguish upon Matherne. Furthermore, we do not believe defendants' conduct was of an outrageous or atrocious nature. Defendants had a legal right to take the actions which they did. See, Steadman v. South Cent. Bell Telephone Co., 362 So.2d 1144, 1146 (La.App. 2d Cir. 1978). For these reasons, Matherne has failed to establish a claim for intentional infliction of emotional distress.

ISSUE FIVE
Lastly, Matherne maintains the trial court erred in issuing an injunction prohibiting him from using the name "RISE, Inc." Shortly after his termination, Matherne registered the trade name "RISE, Inc." through the Secretary of State's Office and incorporated a company under this name.
Under Louisiana jurisprudence, the mere registration of a trade name confers only procedural advantages and not substantive rights. Buyers & T. Serv. Inc. v. Car Maintenance Spec., Etc., 290 So.2d 753 (La.App. 1st Cir.), writ denied, 294 So.2d 550 (1974); La. St. Optical of Jefferson Par., Inc., v. La. St. Optical of Kenner, Inc., 469 So.2d 994 (La.App. 5th Cir.), writ denied, 475 So.2d 1106 (1985); Couhig's Pestaway Company, Inc. v. Pestaway, Inc., 278 So.2d 519 (La.App. 3rd Cir.1973). Registry of a trade name by one party neither confers any greater substantive rights on that party than existed prior to registration, nor divests another party of any substantive rights he may have had with respect to the name. Hodge v. Red Rockets Fireworks Co., Inc., 409 So.2d 680 (La.App. 1st Cir.1981). The rule for resolving which opposing claimant is entitled to use a trade name is determined by which *1018 party first appropriated the name by use. La. St. Optical, supra; Metalock Corp. v. Metal-Locking of Louisiana, Inc., 260 So. 2d 814 (La.App. 4th Cir.), writ denied, 262 La. 189, 262 So.2d 788 (1972).
In this case, the evidence shows that Response Instrument had used the trade name "RISE, Inc.", sometimes in conjunction with the full name under which it was incorporated, extensively over a period of many years. Response Instrument has utilized this trade name in its corporate letterhead and stationery, business checks, invoices, advertisements and business cards. Further, there was testimony that Response Instrument is commonly known as "RISE, Inc." among its clients, business associates and suppliers. Therefore, the use of this name by Matherne's new corporation would cause great confusion. Additionally, Matherne admitted at trial that part of the reason he incorporated his company under the name "RISE, Inc." was to use this as leverage against Response Instrument. Under these circumstances, we believe Response Instrument was clearly entitled to the injunction issued by the trial court.
For the above reasons, each of the judgments appealed from are affirmed. All costs of appeal are to be paid by Mr. Matherne.
AFFIRMED.