616 So.2d 844 (1993)
STATE of Louisiana, DEPARTMENT OF SOCIAL SERVICES, OFFICE OF FAMILY SUPPORT, in the Interest of Javis STERLING, minor child of Audrey Sterling, Plaintiff-Appellee,
v.
Donald COLEMAN, Defendant-Appellant.
No. 92-500.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
Richard Dean Michels, for State, Dept. of Social Services.
Louis Edward Buatt, for Donald Coleman.
*845 Before STOKER, THIBODEAUX and SAUNDERS, JJ.
SAUNDERS, Judge.
In this action by the State of Louisiana to establish paternity, pursuant to the provisions of LSA-R.S. 46:236.1, et seq., the trial court found the defendant, Donald Coleman, to be the natural father of the minor, Javis Sterling. Coleman appeals. We reverse.

FACTS AND PROCEDURAL HISTORY
On April 5, 1975, a son was born to an unwed minor, Audrey Mae Sterling. Audrey was seventeen at the time, not turning eighteen until June 26, 1975. Audrey named the child Javis Ray Sterling.
On May 14, 1975, while Audrey was still a minor, she sued the defendant, Donald Coleman, through counsel, Sylvia Taylor, attorney for the Southwest Louisiana Legal Services Society, Inc., in suit number 105,553 on the docket of the 14th Judicial District Court, Parish of Calcasieu, for the establishment of paternity and child support for Javis. After filing an answer of general denial, defendant filed a peremptory exception, excepting to the petition based on Audrey's lack of procedural capacity as an unemancipated minor to bring suit.
The matter came on for hearing on the peremptory exception and the trial on the merits on December 4, 1975. The exception was referred to the merits of the case. At the conclusion of the trial, judgment was rendered in favor of the defendant, Donald Coleman. No ruling was made on the exception due to the judgment rendered.
Fifteen years later, on March 3, 1990, Audrey applied for State AFDC benefits for the child, Javis. She named Donald Coleman as the natural father of Javis in the State Form 401, "Agreement to Relinquish Child Support Payments" to the State. The State's Enforcement Services office in Calcasieu Parish contacted Coleman for his admission of this fact and a stipulation for child support, and notified him of an appointment on July 7, 1990. Coleman failed to show up for the appointment.
Thereafter, on August 2, 1990, the Department of Social Services filed a petition against Coleman to establish paternity of Javis and to set child support payments. A default judgment was signed on October 3, 1990, establishing paternity and ordering Coleman to pay support in the amount of $275.00 per month.
On January 28, 1991, Coleman filed a "Motion to Set Aside (the October 3, 1990, judgment) and Declare Issue of Paternity of Jarvis [sic] Sterling Res Judicata" (based on the 1975 judgment).
On March 1, 1991, the State filed a "Motion for Nullification of Judgment" of the 1975 judgment based on fraud/ill practices.
On March 26, 1991, Coleman filed an exception of prescription to the motion for nullification of judgment based on LSA-C.C.P. art. 2004.
Upon consolidating the records and pleadings, the trial judge ruled that the judgment rendered on December 4, 1975, in the matter entitled Audrey Mae Sterling v. Donald Coleman, Docket No. 105,553, dismissing Sterling's suit for paternity and support against Coleman, was a nullity. The trial judge further denied Coleman's "Motion to Set Aside Judgment and Declare the Issue of Paternity of Javis Sterling Res Judicata," and also denied Coleman's exception of prescription filed in suit No. 105,553, in response to the State's Motion for Nullification of Judgment. The State's motion for nullification was granted.
The trial judge issued the following reasons on October 24, 1991:
THE COURT: In the 105,553 matter a suit was filed for the paternity of the child, Jarvis [sic] Sterling, by his mother, Audrey May Sterling, who at the time was a minor of seventeen years of age. This matter was filed May 14, 1975. She was born June 26, 1957. So, in a little more than a month she would have become eighteen years old. The Court has reviewed the facts and law in the matter entitled Audrey May Sterling versus *846 Donald Coleman 105,553. It is the finding of this Court that the Court in its failure to rule on a peremptory exception put the cart before the horse. This exception had merit and could have been cured by amending the petition to change the party plaintiff to the action. The Court takes judicial notice of the minutes of hearing dated December 4, 1975 wherein it reflects that "A ruling on the exception is not necessary due to the ruling herein". Although the minor was represented by counsel at the hearing and she had become a major by the time the matter was brought to trial, it is clear to this Court that the Code of Civil Procedure Article 683 and 732 mean what they say. The Article clearly states that a minor neither has the capacity to sue or be sued. Due to the fact that the minor has no right to sue or be sued, the Court must then answer the question of what effect that has on the judgment rendered in suit 105,553. That judgment dismissed the actions of the minor mother seeking proof of paternity in that matter. The Court looks at Article 2002 of the Code of Civil Procedure which clearly states that a final judgment rendered against an incompetent person, and in this case a minor, that is not represented as required by law is null and void. In the case at hand the minor was represented by an attorney, but the Court must interpret Article 2002 to mean exactly what it says. The minor had no tutor appointed to represent her in the action, and the failure to have that protection offered or afforded the minor is of great importance. The Court is aware of the case of Nicosia v. Guillory, 322 So.2d 129, and the facts in that matter are not the same as presented in the matter before the Court. In the present case we have a plaintiff that is a minor, and the treatment of a plaintiff and a defendant that happens to be a minor is treated differently; see Code Article 683 and 732. In this case there has never ever been a tutor appointed for the minor.
Now, turning the Court's attention to the proceedings entitled State of Louisiana versus Donald Coleman, 90-3721 the Court has found that the previous judgment dismissing the claim that Mr. Coleman is the father of Jarvis [sic] Sterling, his a nullity, it must deny the motion to set aside the judgment rendered in 90-3721. In that judgment, a default judgment, Mr. Coleman was named the father of Jarvis [sic] Sterling. The Court must also deny the plea of res judicata. The claim that Mr. Coleman was not given notice of the judgment is erroneous in that the record reflects that Mr. Coleman was personally served with notice of judgment on October 6, 1990. Res judicata does not apply to a judgment that is a nullity. I'll sign a judgment to that effect when presented by the attorneys. Notice to Mr. Michaels and Mr. Painter.
From this judgment, Coleman appeals, asserting the following assignments of error:

I.
The trial judge erred annulling the judgment rendered December 4, 1975 and signed December 12, 1975, in the matter entitled "Audrey Mae Sterling v. Donald Coleman", Docket No. 105,553.

II.
The trial judge erred by failing to rule on the merits of the Motion to Set Aside Judgment and Declare the Issue of Paternity of Javis Sterling Res Judicata.

III.
The trial judge erred denying Coleman's Exception of Prescription to the State's Motion for Nullification.
I. Did the Trial Court Err in Annulling the 1975 Judgment based on Sterling's Procedural Incapacity?
Specifically, Coleman contends that the trial judge incorrectly determined that the holding of Nicosia v. Guillory, 322 So.2d 129 (La.1975), does not apply to the facts of the instant case. We agree.
LSA-C.C.P. art. 855 provides:

*847 It is not necessary to allege the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of a legal entity or an organized association of persons made a party. Such procedural capacity shall be presumed, unless challenged by the dilatory exception.
LSA-C.C.P. art. 928 provides that "[t]he declinatory exception and the dilatory exception shall be pleaded prior to answer or judgment by default."
Additionally, if the exception of lack of procedural capacity is not timely filed, it is waived. Davis v. Bankston, 192 So.2d 614 (La.App. 3d Cir.1966).
In the 1975 action, Coleman was timely and properly served. Coleman answered Audrey's suit, then filed a Peremptory Exception of No Right of Action, contending lack of procedural capacity. Coleman's exception was procedurally defective in that he failed to raise the issue by dilatory exception, before the filing of his answer. At the time of that trial, the trial court did not rule on this exception, instead, it rendered judgment in favor of Coleman and dismissed Audrey's lawsuit. At the time the judgment was rendered, Audrey was a major. According to Nicosia, supra, the judgment rendered against a defendant who became a major was not even technically annullable as rendered "against an incompetent person not represented as required by law." LSA-C.C.P. art. 2002(1). We see no reason why the same reasoning cannot be applied to Audrey, who although was the plaintiff in the suit, had judgment rendered in favor of Coleman.
See also the case of Franks v. Mercer, 401 So.2d 470 (La.App. 2d Cir.1981), wherein the district attorney brought a paternity action in the name of the minor mother and obtained a judgment. The court held:
The DA's bringing of the suit in the name of the minor plaintiff does not fatally affect the judgment which is appealed in this instance. Moreover, defendant made no objection to the minor plaintiff's procedural capacity in the trial court. See C.C.P. 683. This is a dilatory objection which is deemed to be waived if not pleaded in limine. C.C.P. 926(6), 928, Nicosia v. Guillory, 322 So.2d 129 (La.1975).
Franks, 401 So.2d at 472.
Therefore, the trial judge in the instant case was incorrect in nullifying the judgment based on Audrey's procedural incapacity at the time that the first suit was filed.
II. Is the Judgment Res Judicata?
Res Judicata, set forth in LSA-R.S. 13:4231, states:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
* * * * * *
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
This article (former LSA-C.C. art 2286) which is the basis of the doctrine of res judicata, is to be strictly construed. A plea of res judicata should not be sustained unless pleadings and facts clearly justify its application. Pacific Finance Company of Caddo v. Benson, 149 So.2d 239 (La.App. 2d Cir.), writ denied, 244 La. 128, 150 So.2d 588 (1963). In Heine v. Muse, 206 So.2d 529 (La.App. 1st Cir.1968), the court discussed the theory of res judicata as follows:
The theory of res judicata established in our law is enunciated in Article 2286 of the Civil Code:

*848 "The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality." LSA-C.C. Art. 2286.
In order to avoid the possibility of the same question becoming the subject matter of litigation indefinitely renewed, thereby preventing a decree of court from being enforced, this article elevates to the authority of truth that which has been decided by a definitive judgment in contentious proceedings. RES JUDICATA PRO VERITATE HABETUR. This truth or the authority of the thing adjudged, however, is simply a legal verity, or stated otherwise, is merely relative. It exists and is opposable to the renewal of an action through the exception of res judicata only when the three conditions enumerated are present.
As a matter of stricti juris and by rule and jurisprudence too well established to require citation, for defendant's exception to act as a bar to the present suit there must exist between the prior suit and the present one a concurrence in the identity of the cause of action, the object or thing demanded and the parties and their qualities.
Heine, 206 So.2d at 531.
The second paternity suit was brought by the State through the DHBR pursuant to LSA-R.S. 46:236.1, which provides in pertinent part:
E. (1) By accepting AFDC for or on behalf of himself or another individual, the applicant or recipient shall be deemed, without the necessity of signing any document, to have made an assignment to the department of his entire right, title, and interest to any support obligation such applicant or recipient may have in his own behalf or on behalf of any family member for whom the applicant is applying for or receiving AFDC which has accrued at the time of the certification for AFDC and which accrues during the time AFDC is furnished. The assigned support rights shall constitute an obligation owed to the department by the person responsible for providing such support, and said obligation shall be established by an order of a court of competent jurisdiction, and the department may thereafter collect by appropriate process any outstanding debt thus created. Voluntary child support payments made to the applicant or recipient at the time of certification for AFDC or during the time AFDC is furnished shall be deemed to have been assigned to the department, unless such assignment is contrary to a valid court order. The department may thereafter collect such support payments by appropriate process.
(2) The applicant or recipient shall also be deemed, without the necessity of signing any document, to have consented to the designation of the department as payee in an initial or amended order of support and to have appointed the SES program administrator as his or her true and lawful attorney-in-fact to act in his or her name, place, and stead to perform the specific act of endorsing any and all drafts, checks, money orders, or other negotiable instruments representing support payments which are received on behalf of such individual or his caretaker. The department shall be an indispensable party to any proceeding involving a support obligation or arrearages owed under this Section. The provisions of this Section shall apply retrospectively to all support rights assigned, whether by written assignment or by operation of law, prior and subsequent to October 1, 1981. Amended by Acts 1988, No. 495, § 1, eff. July 9, 1988.
F. (1) The department, except when it is not in the best interest of the child, may without the necessity of written assignment, subrogation, tutorship proceedings, or divorce proceedings, take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for *849 the purpose of fulfilling its responsibility under this Section, in any court of competent jurisdiction, to obtain an order, judgment, or agreement of support against the responsible person in any case in which the department is providing services under this Section. The amount of such support shall be set only by order of the court or by the consent of the parties, but in either case the department shall be designated as payee. Additionally, the department may take direct action to modify an order or judgment of support, including actions to increase or decrease support, in any case in which the department is providing services pursuant to this Section. A separate and distinct cause of action in favor of the department is hereby created, and suits brought under this provision need not be ancillary to or dependent upon any other legal proceeding.
It must first be determined whether the parties to the present suit are the same parties and are, therefore, bound by the 1975 judgment. There is no requirement that the parties actually be the same parties physically, but only that they share the same legal identity. This requirement of identity is met where one is a successor or privy of one of the parties involved. See Ditch v. Finkelstein, 399 So.2d 1216 (La.App. 1st Cir.1981), and cases cited therein.
In the recent case of O'Bannon for O'Bannon v. Azar, 506 So.2d 522 (La.App. 1st Cir.), writ denied, 511 So.2d 1158 (La.1987), the court discussed res judicata in terms of a paternity action and subsequent filiation action. In 1980, Soula O'Bannon filed a paternity action against Robert Azar. The trial court held that Azar was not the father of the child and the judgment was affirmed on appeal. Subsequently, in 1985, the child, through a tutor, brought a filiation action pursuant to LSA-C.C. arts. 208 and 209, praying that Azar be declared the child's father. Azar responded with the peremptory exception of res judicata. The trial judge sustained the exception and on appeal, the ruling was affirmed. The court of appeal found that the child was represented in both suits, therefore, there existed an identity of parties in the paternity suit and the filiation action. This case analyzed both suits as based on the right that is the child's right, citing Dubroc v. Dubroc, 388 So.2d 377, 380 (La.1980). We see no reason to treat the instant situation differently.
The paternity action in 1975 is based on a right that is the child's right. The paternity proceeding instituted by the State in the instant case is also based on that same right. It is governed by the same rules as all paternity proceedings instituted by or on behalf of a child. The legislatively created assignment of Sterling's right to any child support due or to become due to DHHR in LSA-R.S. 46:236.1(E), and to bring a paternity action in (F), does not abrogate the fact that it is based on the child's right to support. In the 1975 paternity suit, Sterling asserted the child's right in her representative capacity. The assignment to DHHR is actually an assignment of Sterling's right to assert the child's right to support. DHHR, as assignor of Sterling's "right, title, and interest," is merely representing Sterling's right as the parent of Javis to enforce the obligation owed to the child. Therefore, the authority of the thing adjudged applies to DHHR as it would to Sterling and to the child, Javis.
Contrary to the State's argument, although a statutorily created "separate cause of action" exists, this does not abrogate the principles of res judicata. The words "cause of action" in the res judicata statute, are to be interpreted to mean "cause." Mitchell v. Bertolla, 340 So.2d 287 (La.1976). The cause is said to be the juridical or material fact which is the basis of the right claimed, or the defense pleaded. Cause in Louisiana may be likened to "grounds." Id. at 291.
The grounds of the cause of action created by LSA-R.S. 46:236.1(F) are the same grounds for the paternity suit in the 1975 action: paternity and support. We have no difficulty in determining that the requirements of "same cause" have been satisfied.
In providing for the separate cause of action, the legislature could not have intended a different result, which would result *850 in the relitigation of paternity in countless cases. This statutory provision contemplates that there exists no previous judgment on the issue of paternity. To avoid absurdity, the statute must be construed to mean that the State may institute or continue paternity/support proceedings on a mother's refusal to do so, or on her abandonment of a suit which she has begun.
Additionally, we have no difficulty in determining that the "demands" are founded on the same cause of action. With the requisite elements of res judicata met, the judgment obtained in 1975 was conclusive of the issue of paternity and that judgment has a binding effect. The State's subsequent suit should have been dismissed. We find that the trial court should have sustained the exception of res judicata.
Coleman's last assignment of error is moot due to our finding of res judicata.
For the foregoing reasons, the judgment of the trial court is reversed. Costs at the trial level and on appeal to be paid by the State.
REVERSED.