632 So.2d 828 (1994)
Steve MAVROMATIS, Michael Mavromatis and Stacy Mavromatis Wallace
v.
LOU-MAR, INC., d/b/a The Pearl Restaurant and Marie C. Parque Individually and as an Officer and Director of Lou-Mar, Inc.
Nos. 93-CA-0379, 93-CA-1212.
Court of Appeal of Louisiana, Fourth Circuit.
February 11, 1994.
*829 M. Richard Schroeder, Rosemarie Falcone, Douglas N. Currault, II, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for plaintiffs.
Jack M. Alltmont, Cary J. Amann, Sessions & Fishman, New Orleans, for defendants.
Before BARRY, ARMSTRONG and JONES, JJ.
ARMSTRONG, Judge.
These two consolidated appeals both arise from the same suit. One of them, No. 93-C-0379, *830 is taken from a judgment maintaining an exception of res judicata as to some of the claims in the petition. The other, No. 93-CA-1212, is taken from a judgment maintaining an exception of no cause of action as to other claims of the petition. The issue of res judicata is particularly difficult. The statute governing that issue is relatively new and the trial court, like this court, had little in the way of interpretive caselaw for guidance. However, after giving careful consideration to the view of the trial court, as well as the arguments of the parties, we believe res judicata should not be applied in this case. As we find both of the appealed-from judgments erroneous as a matter of law, we reverse and remand as to both appeals.
Elea "Louie" Mavromatis owned 51% of the stock in a corporation named Lou-Mar, Inc. and the remaining 49% of the stock was owned by Marie Parque. The name "Lou-Mar" is short for "Louie" and "Marie". The corporation operated The Pearl restaurant in New Orleans. Elea Mavromatis and Marie Parque had lived together, without marrying, for fifteen years at the time of Elea Mavromatis' death. Elea Mavromatis was survived by three adult children, Michael Mavromatis, Steve Mavromatis and Stacy Mavromatis Wallace.
Elea Mavromatis died intestate. A judgment of possession in his succession proceeding recognized his three children as his universal heirs. Thus, Elea Mavromatis' 51% of the stock of Lou-Mar, Inc. was inherited by his children.
A number of disputes arose between the three Mavromatis children, who are the plaintiffs-appellants in each appeal, and Marie Parque, who is the defendant appellee in each appeal. These disputes involved the 51% of the stock of Lou-Mar's, Inc., inherited by the three Mavromatis children, some small personal possessions of Elea Mavromatis inherited by the Mavromatis children but in the possession of Marie Parque, and the final disposition of the remains of Elea Mavromatis.
The Mavromatis children filed a suit for a writ of mandamus against Marie Parque as corporate secretary of Lou-Mar, Inc. seeking to compel her to call a Lou-Mar, Inc. stockholders' meeting and to register them in Lou-Mar, Inc.'s records as the owners of 51% of the corporate stock (presumably to facilitate their voting the stock at the stockholder's meeting they sought).
Lou-Mar, Inc.'s articles of incorporation contain a buy-sell provision which provides that the shares of either Elea Mavromatis or Marie Parque, whichever first dies, will be valued and purchased by Lou-Mar, Inc. Presumably because of this buy-sell provision, the trial court ruled against the Mavromatis children and in favor of Marie Parque as corporate secretary, in the suit for a writ of mandamus. Thus, mandamus was denied.
Lou-Mar, Inc. notified the Mavromatis children that 51% of the stock which they owned would be purchased by Lou-Mar, Inc. pursuant to the buy-sell provision. A valuation of the stock, prepared by an accounting firm, also was forwarded by Lou-Mar, Inc. to the Mavromatis children. Lou-Mar, Inc. further advised the Mavromatis children that it would reduce the amount it would pay for the Mavromatis children's stock by the amount of certain loans made by Lou-Mar, Inc. to Elea Mavromatis. The Mavromatis children took exception to the valuation of the stock and disputed the existence or effect of the debts of Elea Mavromatis to Lou-Mar, Inc. Consequently, the Mavromatis children filed a second suit against Marie Parque and Lou-Mar, Inc. seeking payment for their stock based upon a higher valuation of their stock and without reduction for the disputed debts of Elea Mavromatis to Lou-Mar, Inc. Both of the present consolidated appeals arise from this second suit.
This second suit also made claims not related to the Lou-Mar, Inc. stock. Specifically, the second suit alleged that Marie Parque had refused to turn over certain small possessions of Elea Mavromatis and that she had improperly disposed of Elea Mavromatis' remains. In particular, the second suit sought damages for intentional infliction of emotional distress. (These allegations as to the intentional infliction of emotional distress will be discussed in more detail below.)
Marie Parque and Lou-Mar, Inc. responded to the second suit with an exception of res *831 judicata as to the claims regarding the Lou-Mar, Inc. stock (i.e., the valuation and the price reduction.) The trial court maintained this exception of res judicata and dismissed all the claims as to the Lou-Mar, Inc. stock.
Louisiana's res judicata statute, as to which there is still little interpretive caselaw as it became effective only January 1, 1991, provides, in pertinent part:
except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
* * * * * *
(2) if the judgment is in favor of the defendant, all causes of action existing at the time of the final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
La.R.S. 13:4231(2). (several statutory exceptions, none applicable to the present case, are provided. La.R.S. 13:4232.)
The res judicata issue in the present case is whether the claims of the Mavromatis children's second suit regarding the Lou-Mar, Inc., stock arises out of the same "transaction or occurrence" as the first (mandamus) suit. Both sides advance reasonable positions. The Mavromatis children argue, in effect, that the "transaction or occurrence" that was the subject matter of the first suit was a matter of corporate governance, a stockholders meeting and stock registry, whereas the "transaction or occurrence" that was the subject matter of the second suit was the valuation and purchase of their stock under the buy-sell provision. Marie Parque argues, in effect, that both suits arise out of the Mavromatis children's inheritance of 51% of the Lou-Mar, Inc. stock, and that this stock inheritance is the "transaction or occurrence." Thus, Marie Parque argues that the Mavromatis children were required to include in their first suit all claims connected to their inheritance of 51% of the Lou-Mar, Inc. stockby supplementing or amending their petition in the first suit if necessary. The trial court reasoned:
According to [the res judicata statute], the plaintiffs were required to assert in their first suit against the defendant all of their rights, and claim all of their remedies arising out of their inheritance of the stock and the corporation's exercise of its rights under the buy-sell agreement. Plaintiffs received written notice of the corporation's intent to exercise its rights under the buy-sell agreement. Plaintiffs received written notice of the corporation's intent to exercise its right to purchase the stock prior to the trial on the writ of mandamus. At that time therefore, the [res judicata] statute required plaintiffs to file a supplemental petition to assert any other claims arising out of the buy-sell provisions, the calculation of the stock price, and the deductions from the stock price.
Reasons For Judgment (November 23, 1992) (emphasis added).
This issue is a close one. However, we are convinced that this close issue should be resolved against the application of res judicata. First, we believe that the analysis of Marie Parque's argument, and the trial court's reasons for judgment, errs by making the Mavromatis children's inheritance of the stock the starting-point for determining what is the "transaction of occurrence" that was the subject matter of the first suit. The inheritance itself was not litigated in the first suit. The first suit dealt with certain actions (or inactions) of the corporation secretary and that, the internal affairs of the corporation, is the "transaction or occurrence" that was the subject matter of the first suit. Although the buy-sell provision was raised as a defense in the first suit, the first suit really had little to do with the ownership of stock, because there was no contest in that case that the children owned 51% of the stock. More importantly, and this tips the balance of the argument in favor of the Mavromatis children, the first suit had nothing to do with the value or price to be paid for the stock. As the stock valuation and price were the issues presented by the second suit, it is apparent that there would be little factual overlap between the first and second suits. Indeed, it appears most probable that the evidence on contested points largely would be different in the first and second suits. A *832 key concern of the res judicata statute, to avoid "needless relitigation of the [same] underlying facts", La.R.S. 13:4231 Comments 1990, is applicable in the present case. Judicial efficiency would have been little increased, and the burdens of litigation on the parties would have been little reduced, if the claims of the second suit had been included in the first suit. That is because, with little overlap between the claims of the two suits, the combination of the two suits into one simply would have resulted in one suit as large and complex as the sum of the two separate suits. Moreover, it appears that the legal issues involved would be quite distinct in each of the two suits. The first suit would present issues of law as to internal corporate governance, which would have no application to the second suit and its focus on the stock valuation and the alleged debts to the corporation.
Additionally, precisely because the issue is a close one, we believe it should be decided by denying application of res judicata. The policies of res judicata are to increase judicial efficiency and to protect parties against unnecessary burdens of litigation arising from repeated lawsuits. La.R.S. 13:4231 Comments1990. Thus, a denial of the application of res judicata when it might, perhaps, be applied, will cause harm only in the forms of a lessening of judicial efficiency and an increase in the burdens of litigation on the defendant. Although we recognize that those possible harms are not trivial matters, we believe they are preferable to possible loss of the plaintiff's substantive rights without their merits ever having been addressed if res judicata were to be applied, when, perhaps, it should not be. See State, Dept. of Social Services v. Matthews, 615 So.2d 1112, 1114 (La.App. 5th Cir.1993) (under new res judicata statute, party urging its application bears the burden of proving its applicability, and any doubt as to its applicability must be resolved against its application); State, Dept. of Social Services v. Coleman, 616 So.2d 844, 847 (La.App. 3rd Cir. 1993) (new res judicata statute to be "strictly construed" and res judicata should not be applied unless clearly justified by the pleadings and facts). Cf. Jenkins v. State, 615 So.2d 405 (La.App. 4th Cir.), writ denied, 617 So.2d 932 (La.1993) (R.S. 13:4232(1) "allow[s] the court to balance the principle of res judicata with the interests of justice").
As mentioned above, the petition of the Mavromatis children also asserted claims for intentional infliction of emotional distress. Marie Parque responded to these claims with an exception of no cause of action. Originally, the trial court denied that exception of no cause of action. About three months later, Marie Parque again filed an exception of no cause of action along with a motion to reconsider the earlier denial of the exception of no cause of action. A hearing was held and, on March 12, 1992, the trial court signed a judgment which sustained the exception of no cause of action as to the claims of intentional infliction of emotional distress. The trial court gave no written or oral reasons for judgment. Notice of the signing of that judgment was given on March 16, 1993. On March 25, 1993, the Mavromatis children timely filed a motion for a new trial and combined with it a motion to amend their petition and submitted to the trial court a proposed First Amended Petition. The next day, March 26, 1993, the trial court denied, without hearing, the motion for reconsideration and to amend. The trial court gave no written or oral reasons for judgment.
When a petition fails to state a cause of action (or otherwise is subject to a peremptory exception), and the petition's deficiency can be remedied by amendment, then the plaintiff should be allowed an opportunity to so amend.
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action shall be dismissed.
La.Code Civ.Proc. art. 934. "As a general rule, the first `shall' in La.Code of Civ.Proc. Art. 934 requires that the adverse party be given an opportunity to amend where there is a conceivable possibility that a cause of action may be stated." Alexander and Alexander, *833 Inc. v. State, Division of Administration, 486 So.2d 95, 100 (La.1986). Accord, Robinson v. North American Royalties, Inc., 470 So.2d 112, 114 (La.1985); Evans v. Detweiler, 466 So.2d 800, 803. (La.App. 4th Cir.1985). Either the trial court erred by failing to consider the proposed First Amended Petition or it did consider the proposed amendment and concluded that amendment would not remedy the deficiency it perceived in the petition. Accordingly, in considering whether the petition stated a cause of action, we will examine the allegations of the proposed First Amended Petition as well as the allegations of the original petition.
The original petition included the following allegations:
X.
Although Mr. Mavromatis died intestate, he left specific instructions regarding his cremation and the location at which he desired his remains to be disbursed. Mr. Mavromatis was cremated in accordance with his last wishes, and his ashes constitute personal effects to which the Mavromatis Children are entitled as his sole heirs and as rightful owners.
XI.
At the time of Mr. Mavromatis' cremation, the Mavromatis Children were put in possession of the ashes of Mr. Mavromatis. The Mavromatis Children planned to hold a final service at which to disburse Mr. Mavromatis' remains in accordance with his last wishes. Ms. Parque was informed of the Mavromatis Children's plans and invited to attend and participate.
XII.
Ms. Parque requested to borrow the ashes of Mr. Mavromatis before the service for what Ms. Parque represented would be a short period of time in which to allow her a private farewell to Mr. Mavromatis. The Mavromatis Children granted Ms. Parque's request based on her representation that she would only retain possession for a short time and then would return the remains in time for the planned service.
XIII.
Despite repeated requests to return Mr. Mavromatis' remains to the children, Ms. Parque refused to do so.
XIV.
After repeated requests, Ms. Parque finally agreed to meet with the Mavromatis Children on June 8, 1991, and at that time represented to them that she had disposed of Mr. Mavromatis' remains.
XV.
Also on June 8, 1991, Ms. Parque returned some of Mr. Mavromatis' personal effects to the Mavromatis Children, but, despite repeated formal demands to do so, refused to return others, including, but not possibly limited to, the following: (i) a three-piece oak book shelf, (ii) two crystal fish, (iii) certain imported shaving brushes, (iv) a framed Mardi Gras poster, (v) a refrigerator and (vi) one table imported from Mexico (collectively the "Outstanding Effects").
* * * * * *

XXXI.
The following non-exclusive acts by Ms. Parque constitute intentional infliction of emotional distress entitling the Mavromatis Children and each of them to the damages prayed for below:
(a) The disposal by Ms. Parque of the children's father's ashes;
(b) The refusal of Ms. Parque to return to the children their father's personal effects;
(c) The refusal of Ms. Parque to properly value their father's stock, to allow the children proper access to all corporate books and records, and the attempt to illegally set-off alleged debts of their father to the corporation; and
(d) other acts to be discovered and evidence at the trial.

*834 XXXII.
Plaintiffs aver that Ms. Parque either actively desired to bring about the mental anguish and emotional distress caused the Mavromatis Children, or must have realized to virtual certainty that her conduct would bring about such results.
The proposed First Amended Petition sought to add the following allegations:
XIIIA.
At all times relevant, Ms. Parque had specific knowledge of the fact that Mr. Mavromatis wanted his cremated remains disposed of by his children in the Gulf of Mexico where he loved to fish with his children during his lifetime.
XIVA.
Specifically, on June 8, 1991, Ms. Parque told Stacy Mavromatis Wallace and Michael Mavromatis that she had thrown the ashes into the Mississippi River.
XIVB.
The Mavromatis Children aver that Ms. Parque's specific intent in throwing the ashes into the Mississippi River was to cause them emotional distress.
XIVC.
At no time did the Mavromatis Children's father ever state that he wanted his ashes thrown into the Mississippi River, Ms. Parque knew that he did not want his ashes thrown into the Mississippi River, and at no time has Ms. Parque ever mentioned to any of the Mavromatis Children that their father wanted his ashes thrown into the Mississippi River.
In evaluating whether the above-quoted allegations state a cause of action for intentional infliction of emotional distress, we assume their truth and interpret them in the light most favorable to upholding the petition and against maintaining the exception of no cause of action.
Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice.... When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence ... The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition and is triable on the face of the papers; for the purpose of determining the issues raised by the exception, the well pleaded facts and any annexed documents must be accepted as true.
Kuebler v. Martin, 578 So.2d 113, 114 (La. 1991) (citations omitted).
The general rule applicable to a trial of such exception is that an exception of no cause of action must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based; that is, unless the plaintiff has no cause of action under any evidence admissible under the pleadings.
Darville v. Texaco, 447 So.2d 473, 475 (La. 1984).
We evaluate the allegations of the Mavromatis children, using the above quoted standards of review, in light of the substantive law of intentional infliction of emotional distress.
One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
Thus, in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that the severe emotional distress would be certain or substantially certain to result from his conduct.
The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly *835 intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam." Restatement, supra, comment d, § 46; Prosser and Keaton, The Law of Torts, § 12, p. 59 (5th ed. 1984).
White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991). Accord Bustamento v. Tucker, 607 So.2d 532, 538 (La.1992).
With regard to the allegations as to the remains of Elea Mavromatis, there is no doubt that they state a claim for intentional infliction of emotional distress. It requires little elaboration or citation to authority to support the conclusion that the unauthorized disposition of the remains of a parent, in a manner known to be in direct contradiction to the wishes of both the parent and the children, will support a cause of action for intentional infliction of emotional distress. cf. Fortuna v. St. Bernard Memorial Gardens, Inc., 529 So.2d 883 (La.App. 4th Cir.1988) (decedent's family members had cause of action for mental distress caused by co-mingling of decedent's remains with those of another relative); French v. Ochsner Clinic, 200 So.2d 371 (La.App. 4th Cir.1967) writ refused, 251 La. 34, 202 So.2d 652 (La.1967), (wife had cause of action for mental anguish caused by unauthorized autopsy on husband); Shelmire v. Linton, 343 So.2d 301 (La.App. 1st Cir.1977) (children had cause of action for mental anguish resulting when car hit burial vaults exposing their parents' remains).
It is provided by La.R.S. 8:655 that, in the absence of a surviving spouse, the surviving children of the decedent have the right "to control the disposition of the remains of a deceased person, unless other directions have been given by the decedent". Marie Parque asserts that Elea Mavromatis did give her "other directions" as to the final disposition of his remains. However, in deciding an exception of no cause of action, we look only to the allegations of the petition, and not to the defendant's assertions as to the facts. "Contrary factual contentions do not support the maintaining of the exception [of no cause of action] but are instead defenses which must be tried on the merits." Sajare Interests, Ltd. v. Esplanade Management, Inc., 459 So.2d 748 (La.App. 4th Cir. 1984).
As to the allegations with regard to certain personal effects of Elea Mavromatis, the issue is a closer one, but in light of the alleged personal nature of the effects, and the need to read the petition as favorably as possible in the context of an exception of no cause of action, we believe these allegations also state a cause of action for intentional infliction of emotional distress. Of course, this is based purely on the face of the petition, and only the better understanding of the facts that the trial court will obtain upon hearing the evidence will allow a real determination of whether there has been any intentional infliction of emotional distress by the alleged failure to turn over the personal effects.
Lastly, we do not believe that the allegations as to the alleged failure to properly value the Mavromatis children's stock, the alleged refusal to allow them proper access to corporate books and records, and the allegedly illegal attempt to reduce the purchase price for their stock by the amount of purported debts of Elea Mavromatis to the corporation, state a cause of action for intentional infliction of emotional distress. Indeed, these allegations describe a perfectly ordinary business dispute. Such disputes are an everyday aspect of commercial life and should not be the subject of legally recognizable claims for intentional infliction of emotional distress. See Matherne v. Response Instrument Service & Engineering Corp., 533 So.2d 1011, 1017 (La.App. 1st Cir. 1988), writ denied, 537 So.2d 1166 (La.1989) (ouster of plaintiff from corporation's board of directors did not support recovery for intentional infliction of emotional distress).
For the foregoing reasons we reverse both of the appealed-from judgments of the trial *836 court and remand for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
BARRY, J., dissents in part.
BARRY, Judge, dissenting in part.
The majority holds that plaintiffs have a cause of action for intentional infliction of emotional distress based on defendant's failure to return certain items which allegedly belonged to Mr. Mavromatis. Even if the allegation is true, the defendants' failure to return Mr. Mavromatis' possessions is not so outrageous and extreme "as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community," White v. Monsanto Co., 585 So.2d 1205 (La.1991).
Plaintiffs' actions did not rise to the level required for an action for intentional infliction of emotional distress as to the personal items.